Advisement. We'll call our last case of the day Township of Tinicum v. U.S. DOT. Good morning, your honors. Good morning. May it please the court, my name is Francis Pelleggi. I represent Tinicum Township, which is in Delaware County, Pennsylvania. If I may, I'd like to reserve three minutes for rebuttal. Granted. Thank you. As you know, the central issue in this case is whether Section 40116C allows Tinicum Township to impose a landing fee on those runways at the Philadelphia International Airport that are within Tinicum Township. The fatal flaw in the Department of Transportation's order that we appeal from is at least twofold. First, they openly ignore eight words and one letter in the statute. Secondly, they completely disregard subsection C in its current form in interpreting the statute. The specific part of the DOT order that we appeal from that explains those flaws is in two footnotes. It's footnote 30 and footnote 33 of the DOT order that we appeal from. And those can be found in Appendix Pages 61 and 63. And Appendix Pages 61 and 63 are part of our opening brief, Volume 1. And in those footnotes, the DOT is very candid in saying that we're not going to, we're going to pretend that those eight words of subsection small b in parens of 40116, we're going to pretend that they're not there, we're going to disregard them because we don't think Congress really intended to include those eight words and one letter of the statute. And those eight words are except as provided in subsection C of this section. They're very candid about completely disregarding those. The second fatal flaw in the order that we appeal from, and which is in footnote 30, they're saying that the reason why they do not want to apply the current existing version of subsection C and instead apply the old version, which was known as Section 1513 small f in parens, is because we really think that the prior version of the statute, which is no longer in effect, is really the best expression of what Congress intended. And because of their candor in admitting in those two footnotes that they're ignoring eight words of the statute and ignoring the current version and instead applying a prior version of the statute, those two fatal flaws, in our view, are completely contrary to recognized principles of statutory construction. Doesn't your reading of subsection C, though, make sections B and D nullities, I think as your adversary points out? Well, subsection small c in parens in its current form is not applied according to the plain language. In our view, that would make subsection small c in parens a nullity. So it's sort of the flip side, perhaps, of their argument. If the current version of subsection small c in parens is not applied according to its plain meaning, then it has no purpose in the statute. But to the extent that there's some tension between C on the one hand and B and D on the other, don't canons of require us to try to harmonize the two. I agree, Your Honor. We should try to harmonize the statute. And the way to harmonize it, in our view, is to look at the structure of the statute. Subsection small b and subsection small d have proscriptions. They specifically enumerate things that may not be done. And they use the words may not. Subsection small c and subsection small e provide for things that may be done. So the structure of the statute, as we read it, has two subparagraphs that list things that may not be done, two subparagraphs that list things that may be done. And subsection small b in parens starts out by saying, except as provided in subsection small c, which I think a logical reading is, you can't do anything in subsection b unless it's in subsection c, which is carved out. Well, counsel, it occurs possibly you're taking an exception from a prohibition as if it were an affirmative permission. Let me ask you to address a perhaps oversimplified example and analogy. Pennsylvania statute says a person may drive an automobile in Pennsylvania only if the seatbelt is fastened. So I get in the car, fasten my seatbelt, and I'm driving. But I don't have a driver's license. I mean, it's kind of like that seems to be what you're doing. You're taking the fact that a certain prohibition is not applicable to you and not looking for what gives you the other things that are required to get permission to do it. Your Honor, that's a very difficult analogy to respond to, but I will respond to it. And the best way for us to respond to that is to look at the whole statute. And section 40116 is structured in four basic parts. There are two basic parts that specifically enumerate what may not be done. And there are two separate parts that specifically enumerate what may be done. And what I'd like to candidly acknowledge is a weakness in our argument, which is the legislative history. We readily acknowledge that the legislative history of the statute appears to be and expressly is supposed to be a codification. And because it's supposed to be a codification, we recognize the weakness in our position is that it's not supposed to be a substantive change. We also recognize that if we were dealing with the prior version of the statute, which was known as section 1513 now, if that were the current version of the statute, in effect, we would not be here today. We would not have any argument and we would not have spent many hundreds of pages analyzing this issue. But that prior version of the statute is not in effect. And it's possible that Congress did make a mistake. If they did not intend to change the substantive meaning of the statute, well, whoever drafted it did a very poor job. Because they didn't just change the number. They completely gutted it, revised it, materially changed it, and actually dissected it and put some parts in a different section. So in those situations, which is not unprecedented, where there's legislative history that is at odds with the plain meaning of the statute, this court and other courts have dealt with those situations. And one situation where this court dealt with that was in Fogelman v. Mercy Hospital, which is a Third Circuit case that we cite in our briefs. And in that case, this court dealt with a situation where the general objectives of the statute were in conflict with the plain meaning of the statute. And in that case, this court said that in those situations where there's a disconnect or a conflict, the plain meaning of the statute needs to prevail over the general objectives of the statute if they're inconsistent. And that's a situation where we have here, where the apparent intent of the statute was simply to recodify it. But if that was the intent, it's not expressed in the plain meaning of the statute. Well, that's a clear winner if the whole statute was composed of subsection c. But that's not the whole statute, right? I mean, there's b, there's d, and I think the statute also states no substantive changes being made. Isn't that in the plain language of the statute also? I think that is in the preamble, Your Honor. But that's part of the law. That's not legislative history. That's the law, right? Well, the problem with that, Your Honor, is I acknowledge that that's what Congress said, that we're not changing the substance. But they clearly did change the substance. And the best way to make it obvious that they changed the substance would be to compare 1513f. Under your reading of the statute, what taxes would be prohibited at major U.S. businesses listed in subsection b and d. b and d, if we're talking about section 4... But doesn't c drive a truck over those? Well, I think... According to your argument. Your Honor, that's a good point. And our position is that section small c in parens is very limited in what it allows taxes to be in the situations that allows taxes to be imposed. And the situation, which it's quite possible that was not foreseen by Congress, is to allow a jurisdiction like Tinicum, which is the jurisdiction within which runways of an airport are located and where planes land and take off. In those situations, subsection small c, in our view, allows that jurisdiction to impose a fee. So anywhere planes land and take off, fees can be imposed under c? Any place that lands, take off, planes land and take off within the jurisdiction that is located within an airport. And I know that... So that means any... All over the country, these fees can be leveled every airport? Your Honor, I'd like to respond to that. I know that one of the arguments that our friends have is that this is going to open the floodgates and that is going to create mass chaos in terms of the airline regulation industry. But there is nothing in the record, and I respectfully suggest since it's not in the airports in the country, where this may be a problem. The only thing in the record is a two-page letter that identifies 10 or 11 other airports that are in jurisdictions which do not own or operate the airport. What the record does not reflect is whether there are any other airports similar to Tinicum where the runways are within jurisdictions that don't own or operate. If parking lots or lands don't... Where planes don't land or take off are in jurisdictions that don't own or operate the airport, in those situations they will not be able to impose a landing fee. So there is nothing in the record to confirm any doomsday prediction that there are any other airports in the country that have runways that are in jurisdictions that are neither owners nor operators of an airport. So to respond to your initial question, Your Honor, we realize that that is the argument that our friends are making, but there's nothing in the record to suggest that there's any other jurisdiction in the country that has airports that has runways located within jurisdictions that neither own or operate the airport. So this was quite likely an unforeseen situation in the drafting of the statute, but there's no confirmation in the record to suggest that there are any flood gates that and if there is an unforeseen consequence because of the way we apply this statute, the solution is not for the... the solution is not for the courts to revise the statute. It seems to be an echo. Yes. I'll stand back a little bit. The solution is not for the courts to revise the statute or for the executive branch through the DOT to revise the statute or as they've done in this case to ignore eight words in one letter or to completely disregard the current version and apply a prior version. That would be making the judicial branch and the executive branch on par with the legislative branch in terms of its ability to legislate. We think the solution is, as it has been done in the past, is for the court to apply the plain language and then if Congress doesn't like the application for Congress to revise the statute, maybe do what it had intended to do originally. But for the court to either ignore the statute's version... I see my time is up. That's all right. You can finish your sentence. To either ignore the current version or to apply a prior version that's no longer in effect would be to make the judicial branch a legislative branch of government, which is not the way our three branches of government were designed. Thank you very much. Thank you, counsel. I understand appellees have split their time somewhat, so we'll hear from... Yes, your honor. Mary Witham for the U.S. Department of Transportation. Thank you. May it please the court. Initially, I would like to respond to a couple of the points that Mr. Pelleggi has indicated. First of all, I think it's important to note at the outset that Section 6A, which is the codification directive that the statute may not be construed as a affirmative enactment of law. It is not legislative history. It is Chevron 1. It is the unambiguous intent of Congress, and the department properly interpreted the statute accordingly. Furthermore, the department's interpretation does not render Subsection C a nullity. Rather, it renders Subsection C a limitation, which has been the consistent interpretation of the department, that it is simply a limitation on otherwise permissible taxes set out in Subsection E1. Furthermore, in regard to the doomsday discussion, and there not being anything in the record, I think, first of all, it's worth noting that in the past 20 years since this particular provision has been law, it's been a well-settled interpretation, so there's been no reason to believe that it had the broad authority to tax that Tinicum now proposes. And furthermore, really every U.S. airport is affected, because if you look at Subsection C, it talks about states and political subdivisions. This is not just a case where you would have townships similar to Tinicum, where they own land underneath airports. Under Subsection C, a state could do this tax according to Tinicum's interpretation, so every airport in every state and territory in the United States is potentially subject to this tax, or to this broader taxing authority. In addition, it would also include county taxes. It would also include, you know, the inter-borough school district could potentially tax, as could water and sewer districts. So it's really a much broader interpretation than Congress clearly intended. I mean, the Anti-Head Tax Act was specifically enacted to limit the double taxation on airline passengers and airlines by state and other political jurisdictions, because Congress believed it would have a chilling effect on the growth and development of air transportation in this country. Congress has specifically and repeatedly limited the taxes and fees that can be imposed by states and localities on airports, and I think when you look at the development of the amendments of the statute, that's very clear. Tinicum, however, argues that there are virtually no limits and attempts to circumvent the entire law through its unique interpretation of Subsection C. Well, under your interpretation, what taxes would be allowed at airports? Well, there would be, from a political jurisdiction point of view, such as Tinicum? Yes. Well, those would be the ones set out in Subsection C, which are the unobjectionable taxes of property taxes, franchise taxes, sales and use taxes on the sale of goods. Those are absolutely acceptable, and if you look at the text, those are specifically set out. That includes franchise taxes. What is not permitted is... But how would that work in should be entitled to generate in light of the valuable service it's providing by having an airport on its property? Well, in fact, Tinicum does derive in excess of $250,000 a year in property taxes, or excuse me, real estate taxes from businesses that are at the airport. In addition, there may be other taxes, but those are the only ones that were set forth in the Tinicum services. It was a negotiated commercial agreement. Well, but that's why we're here. For some reason, you didn't accomplish that. The parties haven't reached agreement to renew that, right? Yes, Your Honor, but I think the thing that the Court has to recognize that this is a commercial dispute. It should not... The fact that there is a commercial dispute that parties cannot come to agreement on should not be the basis for overturning well-settled, established law in this area. I understand that, but you were the one that raised that there had been an agreement in the past. What I'm trying to get at is, and perhaps, you know, even if there is no equity here, perhaps you win the case anyway, but I'm still interested in the equities. What's the fairness of having the federal government hold this little township hostage and have it provide this valuable service without reimbursing it, if that's the case, or tell me that that's not the case? Well, this case was not focused so much, and in fact, the Department did not make specific findings of fact as to what types of benefit the Tinicum did provide. The question was specifically a legal one, whether the statute on its face permitted the type of fee that Tinicum proposed. The Department found that, in fact, Tinicum's fee is a landing fee. A landing fee is only permissible when it is imposed by an airport owner or operator, and Tinicum is not an airport owner or operator, so Tinicum was prohibited from imposing this fee on airlines. But I'm sorry to come back to my original question, which is, can they generate revenue from other fees or other taxes sufficient to reimburse them for the fact that you're on their land? Or is that too ethereal of a question? I'm not sure it's a fair question, but it's one I'm interested in. Well, Your Honor, I mean, I understand your concerns for the equity, and as does the Department, but the Department is charged by Congress with interpreting and particularly as it relates to the aviation industry. There are mechanisms, there are policies by which jurisdictions can seek remuneration for costs that have been expended. In fact, as we indicated in our brief and attached, there is an FAA policy on the use of revenues at airports, so there are ways in which other jurisdictions work out agreements with the airports to get reimbursed for costs that are legitimately related to airport purposes. I mean, do you guys really even have a dog in that fight, as it were? I mean, or is it up to the localities to work it out amongst themselves? As I indicated, it's really a commercial dispute between those jurisdictions. It is not us. Our job is to interpret and apply the statute according to Congress's unambiguous intent, which was that there be no substantive change to the statute, which the longstanding interpretation has been that such double taxation is expressly prohibited. Well, to address Judge Hardiman's concern, Tinicum could just say, I suppose, right, to Philadelphia, you can't use it anymore. Let's say they own the property. They could just say, you're not using it anymore. Those two runways are off limits for you now, right, and then sort of hold them up a little bit. You wouldn't have really much to say about it, I suppose. I think we'd have to hear from the airport first. I'm not sure exactly what their rights and remedies would be, because that was something that, quite frankly, just never came up in this particular case. Let me ask you a procedural question. I don't know if you can, a practical question, rather. Now that you said that this has been settled law for so many years, I mean, does this give you ammunition now to go back up to the Hill to say, we've got to get this thing fixed? Well, I don't believe that it needs to be fixed. Well, it's obviously a question. We'll decide it, but. Yes, but it's the Department's, it's the Department of Interpretation that this is really unambiguous, that it says that subsection c is a limitation. I understand your position, but if we were, if it were in the works, we'd want to know about it. Yes. Okay. Yes. All right. With some of the time left, I think I'd also like to address the issue involving, or the issue involving the standard of review. I think that's very important to remember here. Under Chevron, State Farm, and Kent County, the final order must be affirmed because it follows unambiguous congressional direction in the 1994 Codification Act and supported by the Department's Reasoned Analysis and the Anti-Head Tax Act, which Congress has expressly delegated to the Secretary of Transportation. In order for the court to find our final order as arbitrary and capricious, Tinicum would have to show that, under the State Farm standard, that, you know, we relied on factors that we were not supposed to consider and that we failed to consider any important aspects of the problem, or we offered an explanation that ran counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of Department expertise. I think if you take a look at the final decision, it's clear that it's rational, it's based upon a consideration of the relevant factors, and it's within the scope of the authority delegated to the Department by Congress under the Anti-Head Tax Act. The Department has attempted to follow the unambiguously expressed intent of Congress, and in doing that, it is entitled to substantial deference under both Chevron and Kent County for the interpretation that it has made. Is this largely a legal issue, though? Absolutely. Absolutely. But the Department is charged with interpreting and applying this particular statute, and as a result, having followed the unambiguous intent of Congress that this should not be construed to be a substantive change in the law, which is, in fact, what the Department has done, then the Department's decision should be affirmed. I would also like to point out that in terms of impacts on other airports, just an additional point, since I have a little additional time, is I think it's important to remember that this could potentially have a very or operating with deficit budgets would be under intense financial pressure if the court were to decide in Tinicum's favor that this would be an opportunity to impose additional taxes, which I think Congress had never attempted or had intended. I'd also like to point out that as a result of Tinicum's interpretation, one thing that makes it also unreasonable is because other aviation statutes which Congress has enacted specifically in relation to airport rates would not be applicable to Tinicum. In particular, I'm talking about the rates and charges statute 47129, which is a statute where the Secretary determines the reasonableness of ensuring that airports' fees are reasonable. Thank you, Your Honor. Thank you, Counsel. Good morning, Your Honors. Roy Goldberg on behalf of the Intervenor, the Air Transport Association of America. The airline members obviously take this case very seriously. They want to nip in the bud what is viewed by a clever use or a misuse of some of the language. Responding to some of Your Honor's questions, there was several years in place a settlement agreement between the city of Philadelphia that runs the airport and owns the airport and the township of Tinicum. It expired in 2007, and that's what led Tinicum to do what we think was a maneuver on their part, which was to maybe embarrass the airport a bit, but also then to try to push something in settlement using language that was never intended for that purpose. With respect to some of the questions that were raised, subsection E-1, I think DOT counsel said C, but I think she meant E-1, has many alternatives for a local jurisdiction. There's the real estate property taxes. There's net income taxes. When the concessionaires sell something, there's sales tax they can do. So there are ways of getting money. But those are all going to affect the local mom-and-pop vendors and aren't going to get them into the pockets of the billion-dollar airlines. Well, there's not much left in the pockets of the airlines, but certainly the airlines can have a net income tax. There's not much left in anybody's pockets. Well, I think there could be a net income tax. The question is whether there's a property tax. Now, one thing we haven't talked about this morning so far is that what's clear in the statute, subsection D, is you can't discriminate against the airlines. And there's a whole separate reason why this is a problematic tax is that it's solely on the airlines and that it is not wholly tied to airport or aeronautical use. There's roadways in Tinicum that are going to get part of this money that the record shows are used by non-airport personnel. So that's a separate and independent reason why this tax violates the statute. But we completely agree that this is a situation where you look at the plain language of the statute, which isn't just 401, 116C or B, but also includes the very clear statement, this is a recodification. It's no substantive change. The petitioner cannot get around that language. They don't even have to get to Finley, the U.S. Supreme Court case we cite, which says that basically the presumption with this type of statute is it hasn't changed the law. And what they really want this court to do is to say that Congress legislates by putting elephants in mouse holes. It's something that was never as part of any record, any intention that Congress was going to make this very large change in the law, completely inconsistent with the statute, with the purpose of an anti-head tax act, et cetera. And this is going to come out of nowhere as part of a recodification. And we would submit there's absolutely no support for that. Another point which has not been focused on is that the DOT found this was a fee, not a tax. Subsection 401, 116C relates solely to a tax. Now, we don't need this to win, we believe. We think this court could decide that it's a tax, it's not a fee. But it's an interesting point that they found it was a landing fee and that under E2, only an airport operator can charge a landing fee. And there's no dispute that Tennecom is not an airport operator. That's the end of the case right there, unless somebody wants to take a step back and say, well, even though they called it a privilege fee, and even though the DOT under Chevron, et cetera, deference found that it was a privilege fee, not a tax, we're going to give some slack to the township and say it's a tax. Well, then you get to what's the language of 401, 116C. And this isn't just some mistake that needs to be corrected. It's very clear from all the evidence before the court that 401, 116C is not an authorizing provision, it's a limitating provision. It says you may have a right, Tennecom, to do the net income tax, to do the property tax, whatever the case may be, but not if this is an airline that's flying over your jurisdiction and not landing in it. They're trying to put this elephant in this mouse hole and it doesn't fit. Thank you. Thank you, counsel. Your Honor, I think I'll address the last point first. Mr. Goldberg mentioned the difference between a fee and a tax. I don't recall that issue being raised on the appeal and I don't recall that issue even being addressed in the briefs. And under the well-settled law of the circuit, I think one case is Woodson v. Scott Paper Company. If the issue isn't raised, if the issue is not one addressed by the trial court or the appeal, the order being appealed from, or not addressed in the briefs, that this court should not address. I think one of the best ways for me to use the last two and a half minutes I have is to use an analogy of why we think our reading of the statute should be upheld. And if Section C means anything, it should mean that what the structure of the statute is B and D prohibit certain acts. C and E allow certain acts. Most of the airport, to address one of the questions from Judge Hardiman, most of the airport is tax exempt. We cannot impose real estate property taxes because, for a various number of reasons, most of the airport is The reason why we're doing this is because there is no other way for us to obtain payment for the governmental services that we provide. If there was, we wouldn't be here today. But the analogy I'd like to use is based on the structure of Subsection C, which allows something to be done only if a condition is met. And the analogy I would like to use is if a parent tells his child that he can watch TV only if he cleans his room. You satisfy the condition of cleaning your room, and then only if you satisfy the condition you can watch TV. The child cleans his room, comes to the parent, and says, you told me I could watch TV if and only if I clean my room. I've cleaned my room. Now can I watch TV? And to use the analogy of the DOT's position, the DOT's position is, I previously told you that you can never ever watch TV. So it doesn't matter if you cleaned your room. It doesn't matter if I told you you can watch TV only if you cleaned your room. Because you remember when I told you years ago you could never ever watch TV. Well then the statement would be meaningless. And I don't think that it's consistent with the rules of statutory construction to do what the DOT has done, and which is revealed in footnotes 30 and 33 of their order, that they've ignored eight words in subsection B and completely disregarded the current text of subsection C. And that's the only way they can shoehorn their decision into the conclusion that they have reached. It's inconsistent with statutory construction principles. And the solution is not for this court to rewrite it, or not for the executive branch through the DOT to rewrite or to ignore the statute, but for the court to apply the plain language, and then for Congress to revise it. Thank you. Thank you counsel. Excellent briefing and excellent oral argument today. We'll take the case under advisement and the clerk will adjourn court.